## LAURA A. FERRISS *vs.* CHARLES W. KNOWLES.

A deed in 1868 conveyed " a certain water privilege with the power and appurtenances *as they now exist,* including absolute title to the tannery building with its appurtenances, with the right to rebuild and repair the dam, and to pass and repass in the use of the same *over the accustomed way."* The grantor had constructed three different dams upon the privilege, each at a different place, one in 1839, which was carried away three years after, one in 1842, which stood but a short time, and one in 1844, which was in existence at the time of the conveyance, but, with the tannery building, was in a dilapidated condition. Held that the dam last built was the one intended by the deed, and that the grantee had no right to build a dam at any other place, and that the right of way must be regarded as limited to the last accustomed way.

And held that there was no such ambiguity in the deed as would render parol evidence admissible to show the application of it intended.

TRESPASS *quare clausum fregit;* brought to the District Court of Litchfield County, and tried upon the general issue, with notice, closed to the court, before *Hitchcock, J.* Verdict

for the plaintiff, and motion for a new trial by the defendant for error in the rulings of the court. The case is fully stated in the opinion.

*Andrews* and *Knapp*, in support of the motion.

*Turrill* and *McMahon,* contra.

PARDEE, J. On the 25th day of September, 1868, Eugene Ferriss, then in life, since deceased, was the owner of a tract of land, situated in New Milford, and described in the declaration, containing five acres more or less, and of other land extending northerly and southerly therefrom. Through this tract, from west to east, a small stream of water flowed. Across this stream Ferriss had constructed three dams; the first in 1839, the second in 1841 or 1842, the third in 1844. By means of the power thus obtained he operated a mill for grinding bark. The first dam was located two or three rods westerly from the mill, and was carried away two or three years after it was built. The second dam was located a few rods farther west than the first, and stood only a short time. The third dam was erected about eighteen rods westerly from the mill. On the day above mentioned, there were no visible traces of the first two dams; the third dam, the ditch, the tannery building and the race-way, were in existence, but out of repair, in a ruinous and dilapidated condition. The land between the highway and the dam, on either side, and up to the banks of the stream, was then used by Ferriss for farming purposes, and was enclosed by a fence along and upon each bank. On that day he executed and delivered to the defendant a deed in the following language:—

"To all people to whom these presents shall come:—Greeting: Know ye that I, Eugene Ferriss, of the town of New Milford, Connecticut, for the consideration of one thousand dollars, received to my full satisfaction of Charles W. Knowles of said New Milford, do give, grant, bargain, sell, and confirm unto the said Charles W. Knowles, a certain water privilege, with the power and appurtenances thereunto, as they now

exist, situated at Lanesville, Connecticut, on Two-Mile Brook, so-called, including absolute title to the tannery building, with all the appurtenances thereof, with the right to repair and rebuild the dam, and with the unobstructed right to pass and repass in the free use and occupation of the same over the accustomed way; also the privilege of building additions to the mill, namely, eight feet on the south, and eight feet on the west. To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto Charles W. Knowles, the said grantee, his heirs and assigns forever, to his and their own proper use and behoof. And also I, the said grantor, do for myself and my heirs, executors, and administrators, covenant with the said grantee, his heirs and assigns, that at and until the ensealing of these presents, I am well seized of the premises as a good indefeasible estate in fee simple, and have good right to bargain and sell the same in manner and form as is above written, and that the same is free of all incumbrances whatsoever. And furthermore, I, the said grantor, do by these presents bind myself and my heirs forever to warrant and defend the above granted and bargained premises to the said grantee, his heirs and assigns, against all claims and demands whatsoever. In witness whereof, &c."

After getting this conveyance the defendant constructed a fourth dam at a point between the sites of the first and third, eight rods east of and below the latter. This dam stands upon, and flows water over, the enclosed land upon either side of this stream; and the materials therefor were carried over and upon the land by a way different from the "accustomed way" mentioned in the deed. These acts constitute the trespasses complained of. The defendant justified them by the deed.

The plaintiff claimed title to the enclosed land by devise from Ferriss.

The defendant claimed, and asked the court to decide, that the deed conveyed to him the soil itself to some extent; that by the terms "water privilege" and "power," as used in the deed in connection with the facts found, so much land was

conveyed as was reasonable and necessary to be used for the purpose of the water privilege, and that at least all the land which had ever been used by Mr. Ferriss in connection with and as a part of the water privilege was granted. The plaintiff denied the claims of the defendant, and claimed that the deed did not convey land at all, or, if any, only so much as was covered by the tannery building, with eight feet south and west, and asked the court so to decide.

The plaintiff also claimed, and asked the court to decide, that the deed by its terms gave to the defendant only an easement, in the use of which he was so restricted that he could only rebuild or repair the ditch, race and dam, on the very place where they were in a dilapidated condition at the date of the deed, and that for all acts done by the defendant in erecting, repairing or rebuilding the ditch, race or dam at any other place, he was liable in trespass. Upon this part of the case the defendant claimed, and asked the court to hold, that even if the deed by its terms conveyed to him only an easement or incorporeal right, it was a right of such a character as would authorize him to construct, repair or rebuild a ditch, race or dam, at any suitable place on the stream between the tannery and the dam erected by Mr. Ferriss in 1844, and especially that he would have the right to repair or rebuild on the site of either dam used by Mr. Ferriss.

The claim of the defendant as thus made, is, that by legal construction the deed contains apt words for the conveyance to himself of the right to construct and maintain at any point between the site of the first and easternmost dam, erected in 1839, and the western limit of Ferriss's land, such a dam as would furnish the greatest possible amount of power for the operation of his mill; including of course the unlimited right of flowage over the land on either bank of the stream, below the dam existing at the date of the deed, and then enclosed and used by Ferriss for farming purposes, with the right to pass and repass over the same by such way as he should from time to time choose to use. But the grant is of a certain " water privilege with the power and

appurtenances thereunto *as they now exist.*" These last words have a meaning, and we may not overlook them; they are words of limitation; they also plainly describe what the defendant may take; and that is a water privilege with a dam where one stood on the day of the deed, and the then accustomed way thereto.

For the purpose of removing the ambiguity in the deed as indicated by the respective claims of the parties, and also for the purpose of applying the deed to its subject matter, the defendant offered testimony tending to show that the land itself was the subject of the negotiation which resulted in the giving of the deed, and also tending to show that at the time the negotiation was had between the defendant and Mr. Ferriss in relation to the sale and purchase of the water privilege, Mr. Ferriss went out upon the land on both sides of the stream, and that while so upon the land he, by acts and words, pointed out in whole or in part what constituted his "water privilege," as situated on Two-Mile Brook. The defendant claimed that the testimony which he offered was admissible for each of the purposes above stated. The plaintiff objected to the testimony, and the court ruled it out.

There was no controversy between the parties as to where the dam "existed," or what was the "accustomed way," when the deed was made; the defendant did not claim that he had built the new dam on the site of Ferriss's last one; nor that he had used the accustomed way; therefore, the parol testimony which was offered could not have been used to remove a doubt as to the state of the premises at the time of the deed, nor to apply it as written to the new dam and the new way; but only for eliminating therefrom the expression "as they now exist," and thus enlarging the grant. The expression being clear, it cannot thus be excluded, controlled or contradicted.

The defendant claims that the deed conveyed to him the soil itself to some extent. The plaintiff claims that the deed did not convey land at all, or, if any, only so much as was covered by the tannery building, with eight feet south and west. We leave this question undetermined; for, con-

ceding that the deed conveyed to the defendant the soil as claimed, it does not protect him in the erection of the new dam or in the use of the new way.

There is no error in the ruling of the court below, and a new trial is not advised.

In this opinion the other judges concurred.